UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

J.R.,

                              Plaintiff,

v.                                                   1:21-CV-0526
                                                                      (GTS)

KILOLO KIJAKAZI, Acting Commissioner of
the Social Security Administration,

                              Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEAST NY      ALLISON ZALOBA, ESQ.
  Counsel for Plaintiff                               MICHAEL J. TELFER, ESQ.
95 Central Avenue
Albany, New York 12206

SOCIAL SECURITY ADMINISTRATION          LUIS PERE, ESQ.
OFFICE OF GENERAL COUNSEL                AMANDA J. LOCKSHIN, ESQ.
  Counsel for Defendant                          Special Assistant U.S. Attorneys
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts  21235

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this action filed by J.R. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "Commissioner") seeking Social Security benefits, are Plaintiff's motion for remand pursuant to sentence six of 42 U.S.C. § 405(g) and Defendant's cross-motion for judgment on the pleadings, in compliance with this District's General Order 18.  (Dkt. Nos. 15, 18, 19.)  For the reasons set forth below, Plaintiff's motion is denied, and Defendant's cross-motion is granted.

I.      **RELEVANT BACKGROUND**

   A.      **Relevant Facts**

Plaintiff was born in April of 1966, making him fifty-one years old on the application date (March 28, 2018) and fifty-four years old on the date of the ALJ's decision (December 9, 2020). (T. 7, 382.) He has less than a high school education and has no past relevant work. (T. 20-21.) Plaintiff alleges that he suffers from the severe impairments of schizoaffective disorder, antisocial personality disorder, posttraumatic stress disorder ("PTSD"), substance use disorder, morbid obesity, and degenerative disc disease in the cervical, thoracic, and lumbar spine. (T. 12-14.)

   B.      **Relevant Procedural History**

Plaintiff applied for Supplemental Security Income ("SSI") effective March 28, 2018. His application was denied on July 11, 2018, and he filed a request for a hearing. (T. 216-22.) After a hearing, on January 28, 2019, Administrative Law Judge ("ALJ") David F. Neumann issued a decision denying the application. (T. 169-85.) On March 29, 2019, Plaintiff filed a request for Appeals Council review of ALJ Neumann's decision. (T. 258-60.) On May 21, 2019, the Appeals Council remanded the case back to an ALJ for a second hearing. (T. 186-90.)

Following a second hearing, on February 28, 2020, ALJ Neumann issued a second unfavorable decision. (T. 191-209.) On April 28, 2020, Plaintiff filed a request for Appeals Council review of ALJ Neumann's second decision. (T. 322-25.) On June 22, 2020, the Appeals Council again remanded the case to an ALJ for a third hearing. (T. 210-14.)

The third hearing was held before a different ALJ–Brian LeCours. Following that third hearing, on December 9, 2020, ALJ LeCours issued an unfavorable decision. (T. 7-33.) On

February 5, 2021, Plaintiff filed a request for Appeals Council review of ALJ LeCours' decision. (T. 379-81.) The request was denied on March 18, 2021, thus rendering the ALJ's decision the final determination of the Commissioner. (T. 1-6.) Upon this denial, Plaintiff filed this civil action.

    C.    **The ALJ's Decision**

Generally, in his decision, ALJ LeCours made the following fifteen findings of fact and conclusions of law. (T.10-25.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date, for purposes of 20 C.F.R. §§ 416.920(b) and 416.971 *et seq*. (T. 12.) Second, the ALJ found that Plaintiff has the following severe impairments pursuant to 20 C.F.R. § 416.920(c): schizoaffective disorder, antisocial personality disorder, PTSD, substance use disorder, morbid obesity, and degenerative disc disease of the cervical, thoracic, and lumbar spine. (T. 12-13.) Third, the ALJ found that, even with Plaintiff's substance use, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"), pursuant to 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. (T. 13-14.) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), with limitations. (T. 14-20.)[1] Fifth, the ALJ found that Plaintiff has no past relevant work for purposes

---

[1] More specifically, the ALJ found that Plaintiff has the RFC to perform medium work "except that he can perform unskilled tasks (work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time) can perform low stress work (further defined as work with simple work-related decisions and few workplace changes), can occasionally interact with the general public, co-workers and supervisors, should not be required to read instructions or write reports on the job, and, due to periodic symptom exacerbations associated with substance abuse, would be expected to be absent from work more

of 20 C.F.R. § 416.965. (T. 20-21.) Sixth, the ALJ found that Plaintiff is closely approaching advanced age for purposes of 20 C.F.R. § 416.963. (T. 21.) Seventh, the ALJ found Plaintiff has a marginal education for purposes of 20 C.F.R. § 416.964. (*Id*.) Eighth, the ALJ found that the transferability of jobs skills is not at issue in this case because Plaintiff does not have past relevant work. (*Id*.) Ninth, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC based on all the impairments (including the substance use disorder), there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform for purposes of 20 C.F.R. §§ 416.960(c), and 416.966. (*Id*.) Tenth, the ALJ found that, if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and that therefore he would have a severe impairment or combination of impairments pursuant to 20 C.F.R. § 416.922. (T. 21-22.) Eleventh, the ALJ found that, if Plaintiff stopped the substance abuse, Plaintiff would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Listings, pursuant to 20 C.F.R. § 416.994(b)(5)(i). (T. 22.) Twelfth, the ALJ found that, if Plaintiff stopped the substance use, Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), with limitations. (*Id*.)[2] Thirteenth, the ALJ found the transferability of job skills is not an issue in this case because Plaintiff does

---

than 2 days per month." (T. 14.)

    [2] More specifically, the ALJ found that Plaintiff has the RFC to perform medium work "except that he can perform unskilled tasks (work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time) can perform low stress work (further defined as work with simple work-related decisions and few workplace changes), can occasionally interact with the general public, co-workers and supervisors, should not be required to read instructions or write reports on the job." (T. 22.)

not have past relevant work. (T. 23.) Fourteenth, the ALJ found that, if Plaintiff stopped the substance use, considering Plaintiff's age, education, work experience, and RFC, there have been jobs that exist in significant numbers in the national economy Plaintiff can perform pursuant to 28 C.F.R. §§ 416.960(c) and 416.966. (T. 23-24.) Fifteenth, the ALJ found that Plaintiff's substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use pursuant to 20 C.F.R. §§ 416.920(g) and 416.935; and the ALJ found that, because Plaintiff's substance use disorder is a contributing factor material to the determination of disability, Plaintiff has not been disabled as defined in the Social Security Act, from January 1, 2010 (alleged onset date) through December 9, 2020 (the date of the ALJ's final decision). (T. 23-24.)

        **D.**        **The Parties' Briefing on Their Motions**

                **1.**        **Plaintiff's Motion for Judgment on the Pleadings**

Generally, in his memorandum of law, Plaintiff asserts six arguments. (Dkt. No. 15, Attach. 1.) First, Plaintiff argues, new and material evidence (from after February 19, 2021) supports remanding the Commissioner's decision, because (a) it shows that his limitations did not change when he was sober, (b) it contains full-scale IQ testing, and (c) good cause exists for his delay in obtaining the evidence. (*Id*. at 8-15.) Second, Plaintiff argues, the Commissioner failed to properly develop the record by requesting an intellectual consultative examination, because (a) Plaintiff has a mental impairment, (b) insufficient evidence existed to determine whether Plaintiff was disabled, and (c) indeed, evidence existed showing Plaintiff's lack of comprehension. (*Id*. at 15-19.) Third, Plaintiff argues, the Commissioner's severity determination was legally erroneous, because it did not reflect Plaintiff's limitations being caused

in part by his cognitive defects (and thus failed to fully account for Plaintiff's intellectual impairment). (*Id*. at 20-21.) Fourth, Plaintiff argues, the Commissioner's Listing determination was erroneous, because new and material evidence supports a finding that Plaintiff's impairments meet Listing 12.05. (*Id*. at 21-23.) Fifth, Plaintiff argues, the Commissioner's RFC assessment was legally erroneous, because (a) the new evidence supports the persuasiveness of the opinion of Dr. Beth Halburian, Psy.D., (b) the new evidence supports the persuasiveness of the opinion of Dr. David Schaich, Psy.D., and (c) the new evidence does not support the persuasiveness of the opinions of Dr. Bharat Langer, M.D. (*Id*. at 23-26.) Sixth, Plaintiff argues, the Commissioner's Step Five determination was erroneous, because it relied on an incomplete hypothetical question presented by the ALJ to the Vocational Expert (which failed to include the fact that Plaintiff would be absent from work at least two days per month, off task fifteen percent of the workday, and limited to no contact with co-workers). (*Id*. at 26-27.)

### 2. Defendant's Motion for Judgment on the Pleadings

Generally, in her memorandum of law, Defendant asserts seven arguments. (Dkt. No. 18.) First, Defendant argues, substantial evidence from the relevant period supports the ALJ's decision. (*Id*. at 3-5.) Second, Defendant argues, there is no new and material evidence that would warrant a remand, because (a) Dr. Hartman's July 2021 consultative examination did not (expressly or implicitly) relate back to the period at issue, (b) the new consultative examination would have been cumulative due to its consistency with the two consultative examinations from the period at issue (i.e., Dr. Schaich's examination from June 2018 and Dr. Halburian's examination from September 2019), (c) the new consultative examination does not have a reasonable probability of changing the outcome of the case (which accounted for the absence of

substance abuse), and (d) Plaintiff's September 2021 IQ score would not change the outcome of the case even if it applied retroactively (given that Dr. Langer and the other providers did not suggest that Plaintiff's cognitive function was as limited as an IQ score of 48 would suggest, and indeed the record shows that Plaintiff was able to get certified as a maintenance worker and computer repairer while he was in prison). (*Id*. at 5-9.)  Third, Defendant argues, any error in the ALJ's Step Two, severity finding is harmless, because, even if the ALJ improperly omitted a cognitive-related diagnosis from his formal Step-Two finding, the ALJ moved past Step Two in the sequential evaluation. (*Id*. at 9.)  Fourth, Defendant argues, the ALJ's well-supported finding on the Paragraph B criteria (of Listing 12.05) would prevent a favorable disability determination, because, even assuming that Plaintiff's new IQ score were sufficient to establish an IQ score below 70 and that his intellectual disorder began before he was 22 years old, there is no reasonable probability that the "new evidence" would change the ALJ's finding with regard to the Paragraph B criteria, which was supported by substantial evidence (and which Plaintiff has waived the right to challenge by not discussing this evidence in her brief). (*Id*. at 10-12.)  Fifth, Defendant argues, Plaintiff fails to show any error in the ALJ's evaluation of the opinion evidence in rendering his RFC finding (which is supported by the weight of the evidence), because (a) Dr. Hartman's July 2021 consultative examination is not new or material when considered together with the prior opinions of Dr. Schaich and Dr. Halburian, and (b) the ALJ did not rely merely on an isolated IQ score but relied also on Plaintiff's longitudinal records from the period at issue, his daily activities, and the opinions of several doctors (including his long-time treating psychiatrist Dr. Langer). (*Id*. at 12-13.)  Sixth, Defendant argues, the ALJ's hypothetical question to the Vocational Expert included all the *established* RFC limitations,

because (a) the ALJ's hypothetical question to the Vocational Expert included all the limitations from the RFC finding, and (b) additional limitations were not warranted based on the examinations of Drs. Schiach, Halburian and Hartman and Plaintiff's September 2021 IQ score, which (as previously explained) are not new and material evidence. (*Id*. at 13-14.) Seventh, Defendant argues, the ALJ properly developed the record and was not required to order an intellectual consultative examination, because (a) ALJs are required to obtain additional evidence only if there are "obvious gaps" in the record, which here there were not, and (b) although ALJs are permitted to order additional consultative examinations in their discretion, here ALJ LeCours properly exercised his discretion to not order such an examination, given the fact that he clearly reviewed the evidence on which Plaintiff relies (regarding his limited education, the examinations of Drs. Schaich and Halburian, and his reading and writing abilities). (*Id*. at 14-15.)

        **3.**      **Plaintiff's Response to Defendant's Motion**

Generally, in response to Defendant's motion, Plaintiff asserts five arguments. (Dkt. No. 19.) First, Plaintiff argues, the Commissioner omits from her brief the fact that "the ALJ found [Plaintiff] not disabled because of substance use," relying on substance use to discount the opinions of consultative examiners Drs. Schaich and Halburian. (*Id*. at 3.) Second, Plaintiff argues, new and material evidence warrants remanding the Commissioner's decision, because (a) the Commissioner does not rebut the presumption that, in the absence of evidence indicating otherwise, claimants will experience a fairly constant IQ throughout their lives (and thus Plaintiff's September 2021 IQ score was new and material evidence), and (b) Plaintiff has reported auditory hallucinations to other providers since at least June of 2018 as he did to Dr.

Hartman in July of 2021, and other providers diagnosed him with other conditions (including PTSD, schizoaffective disorder, and multiple substance use disorder) as did Dr. Hartman (and thus Dr. Hartman's consultative examination was new and material evidence). (*Id*. at 3-7.) Third, Plaintiff argues, new and material evidence supports a finding that his impairments meet Listing 12.05, because (a) the ALJ never *expressly* considered Listing 12.05, (b) indeed, it would have been impossible for the ALJ to make a Listing 12.05 determination given that he failed to obtain an intelligence examination (despite multiple requests in the record by Plaintiff's representatives), and (c) together with the examinations of Drs. Schaich and Halburian, the July 2021 examination of Dr. Hartman and Plaintiff's September 2021 IQ score warrant a finding that Plaintiff's impairments meet Listing 12.05. (*Id*. at 7-8.) Fourth, Plaintiff argues, new and material evidence supports a new RFC assessment, because the July 2021 examination of Dr. Hartman and Plaintiff's September 2021 IQ score (a) were not considered by the ALJ in evaluating the opinions of Drs. Schaich and Halburian, and (b) reveal an intellectual disability, not just a learning disability (as considered by State agency review physician M. Marks, M.D.). (*Id*. at 9-10.) Fifth, Plaintiff argues, the Commissioner failed to properly develop the record, because (a) the ALJ did not possess a complete medical history and obvious gaps existed in the record, and (b) in any event, where (as here) there is insufficient evidence on the record to determine whether or not a claimant has a severe cognitive impairment, the ALJ has an obligation to develop the record by ordering intelligence testing. (*Id*. at 10-12.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an


individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

**III.    ANALYSIS**

After carefully considering the matter, the Court denies Plaintiff's motion, and grants Defendant's cross-motion, for the reasons stated in Defendant's memorandum of law. *See, supra,* Part I.D.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

Plaintiff's strongest argument is his second one, arguing that the Commissioner failed to properly develop the record by requesting an intellectual consultative examination.  *See, supra,* Parts I.D.1. and I.D.3. of this Decision and Order.  As an initial matter, the Court rejects this argument because Plaintiff has not adduced sufficient evidence to show that the IQ that was referenced in the November 1983 treatment note of social worker J. Harrison (when Plaintiff was aged 17) was from when Plaintiff was aged 16 or younger (when his IQ sore would have been current for only two years): thus, no gap in the record has been reasonably shown to exist.  (Tr. 1380 [Ex. 21F, at 49].)

In any event, even if such a gap existed, the Court rejects Plaintiff's second argument for an alternative reason: the Court is persuaded, even if the ALJ improperly omitted a cognitive-related diagnosis from his formal Step-Two finding, any error would be harmless, because Plaintiff has still not shown that a reasonable probability exists that the "new evidence" would change the ALJ's finding of only moderate Paragraph B limitations (especially given Plaintiff's longitudinal records from the period at issue).  *See, supra,* Part I.D.2. of this Decision and Order; *see also Pough ex rel. K.P. v. Comm'r of Soc. Sec.,* 10-CV-1547, 2012 WL 4490892, at *4 (N.D.N.Y. Sept. 28, 2012) (Treece, M.J.) (finding that a post-ALJ decision IQ score was not new and material because the score was not sufficient to establish *all* the listing's requirements) (emphasis added); *cf. Leonard v. Comm'r of Soc. Sec.*, 05-CV-1084, 2008 WL

12

3285947, at *10-12 (N.D.N.Y. Aug. 7, 2008) (Scullin, J.) (finding an IQ exam to be material where it was relevant to the claimant's impairments during the period for which benefits were denied, it was probative of mental capacity, *and there was a reasonable possibility it would have influenced the ALJ to decide the claimant's application differently*).

Contrary to Plaintiff's argument, the Court finds that the ALJ sufficiently considered Listing 12.05. (T. 13 [noting that the ALJ "considered listings 1.04, 6.05, 12.03, 12.08, *and all other relevant listings in conjunction with SSR 02-1P*"].) Indeed, the ALJ expressly found that, even including substance abuse, Plaintiff's impairments would not satisfy the Paragraph B criteria. (*See, e.g.,* T. 14 ["With regard to . . . the 'paragraph B' criteria, based on the evidence discussed further below and considering all of the claimant's impairments, including his substance use, I find that the claimant has moderate difficulty understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace, and marked difficulty adapting or managing himself."]; T. 22 ["In terms of the 'paragraph B' functional limitations, when substance use is removed from consideration, based on the totality of the evidence, I find that the claimant has no more than moderate functional limitations with respect to each of the 'paragraph B' functional domains."].)

For all of these reasons (including those stated in Defendant's memorandum of law), the Court denies Plaintiff's motion and grants Defendant's cross-motion.

**ORDERED** that Plaintiff's motion (Dkt. No. 15) is **DENIED**, and Defendant's cross-motion (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that the final decision of Defendant is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: November 14, 2022
      Syracuse, New York

_Glenn T. Suddaby_
Glenn T. Suddaby
U.S. District Judge